[No. B072474. Second Dist., Div. Six. Mar. 8, 1994.]

In re the Marriage of WALTER and BEVERLY BEUST.
WALTER BEUST, Respondent, v.
BEVERLY BEUST, Appellant.

**COUNSEL**

George L. Wittenburg for Appellant.

Thomas P. Anderle for Respondent.

OPINION

**STONE (S. J.), P. J.**—Beverly Beust (Beverly) appeals the trial court's denial of her motion for modification of spousal support from her former husband Walter Beust (Walter). We reverse.

*Facts*

The parties' marriage was dissolved in 1986 pursuant to a stipulated judgment. They had been married for 32 years. Beverly did not work outside of the home during the marriage. She is now 60 years old.

Walter is employed as an executive with Raytheon Company, and was so employed during his marriage to Beverly. His annual income is in the $100,000 range. He has remarried and his current wife is a real estate agent.

Following the dissolution of her marriage to Walter, Beverly moved to Massachusetts. The parties had purchased a condominium there during their marriage, which was awarded to Beverly and in which she currently resides. Beverly obtained full-time employment in Massachusetts as a bookkeeper until November 1991 when she was laid off. Thereafter, she received unemployment benefits. Just prior to filing her motion for modification of support in June 1992, she found another full-time job at an automobile dealership, and presently continues in that employment.

The pertinent portion of the parties' stipulated judgment reads: "1. [Walter] shall pay to [Beverly] as and for spousal support the sum of $2,500 per month commencing August 1, 1986, and payable on the first of each and every month thereafter for a period of six (6) years, through July 31, 1992, at which time spousal support shall be reduced to One Dollar ($1.00) per year payable on August 1 of each year commencing August 1, 1992, unless sooner terminated upon the remarriage or death of [Beverly] or death of [Walter] or further order of Court. [¶] [Beverly] shall be entitled to earn up to $10,000 per year and such earnings shall not be the basis for a reduction in spousal support. Spousal support shall be reduced One Dollar ($1.00) for each One Dollar ($1.00) which [Beverly] earns in excess of $10,000 per year, gross earnings. [¶] [Walter] and [Beverly] acknowledge their understanding that *the spousal support ordered herein is modifiable and may be increased or decreased* upon proper application to a Court of competent jurisdiction. The parties further understand that the reduction of spousal support to One Dollar ($1.00) per year (which is a commonly used vehicle for 'jurisdictional support') *preserves [Beverly's] right to seek an extension of the period of time during which spousal support shall be paid,* provided that

all other factors upon which the payment of spousal support is based are present (that [Beverly] has not remarried, for example). It is not the intention of the parties, by insertion of the foregoing language in this stipulation, to in any way alter or amend the existing rules and authorities with respect to modification of spousal support as ordered herein, but only to clarify the fact that spousal support is modifiable and that *the Court does have the right to modify the duration of the spousal support obligation by extending or reducing it* and to modify the amount of spousal support either upward or downward, upon proper showing to the Court." (Italics added.)

No modification of the stipulated judgment pertaining to spousal support was sought by either party until Beverly filed her modification motion in June 1992. This was two months prior to the automatic stepdown provision reducing support payments to $1 per year effective August 1, 1992. Beverly's motion requested an extension of the period of the prejurisdictional support payments.

Beverly's declaration attached to her modification motion stated that from 1989 to 1991 the amount of her spousal support from Walter had been adjusted for the amount of earnings she received in excess of $10,000 per year. She said she was still dependent on continued support from Walter in order to meet her living expenses. She did not want to invade her investment money from the marriage which was for her retirement, and she did not have any additional retirement or pension plan.[1] She further stated that Walter had the means to continue paying her spousal support and that his income had increased due to his remarriage.

Beverly submitted an income and expense declaration showing total monthly expenses of $3,017 and a net monthly disposable income of $1,198. This resulted in a net monthly deficit in living expenses of $1,819. Walter's income and expense declaration showed his total monthly expenses were $7,516 and his net monthly disposable income was $9,344. Walter's declaration clarified that his wife, although earning $20,652 in 1991 as a real estate agent, had zero income in 1992. He stated that his income for the last 12 months was $131,274.

---

[1]Beverly's income and expense declaration showed a total of $191,000 in property including money in checking and savings accounts, certificates of deposit and money market accounts, stocks and bonds, and real property (the condo valued at $58,000). In responding to Beverly's motion for modification in the trial court, Walter stated that the parties' settlement was intended to "provide [Beverly] with *assets* and income and an opportunity to add to her income so that I could have a definite time when I would no longer pay spousal support . . . ." (Italics added.) On appeal, however, neither party discusses the issue of the value of Beverly's property in relation to Beverly's request for continuing spousal support. Walter's silence on this subject is a concession that Beverly need not invade "retirement assets" for current support.

Walter opposed Beverly's motion for modification of support on the grounds that the settlement agreement provided he "could have a definite time when I would no longer pay spousal support"; the settlement also was designed to permit Beverly to be employed without losing her right to spousal support for six years; although receiving the benefit of that bargain she now does not want its burden; and Beverly has suffered no change of circumstances since the dissolution except that now she is working and earns about $19,240 per year.[2]

At the hearing on Beverly's modification motion, her counsel argued that the settlement agreement allows modification of support subject only to the court's discretion, that the parties' marriage was long term, and that there is a legal presumption in favor of continued support after a lengthy marriage. Walter's counsel argued that Beverly was trying to repudiate the stipulated agreement's "step-down" provision and that Walter's remarriage was not a material change of circumstance justifying modification of the agreement. Walter's counsel further cited the case of *In re Marriage of Aninger* (1990) 220 Cal.App.3d 230 [269 Cal.Rptr. 388] as controlling.

Although stating that Beverly's counsel could argue she had shown her monthly expenses "far outreach" any income she brings in, the court denied her modification motion to continue duration of support. It found that 1) *In re Marriage of Aninger, supra,* 220 Cal.App.3d 230, was on point relative to the facts of this case, 2) no evidence was presented indicating that despite Beverly's reasonable efforts she was unable to support herself, and 3) it was inappropriate to discard the parties' negotiated settlement in the absence of a showing by Beverly of a change of circumstances.

## DISCUSSION

The issue is whether the trial court abused its discretion by denying Beverly's motion to extend the duration of spousal support in an amount above the jurisdictional level. The court concluded in denying the motion that there was "no" evidence Beverly was unable to support herself. In view of the uncontradicted evidence that Beverly's income is insufficient to pay all her living expenses, we conclude the court's decision is erroneous.

Implicit in Walter's brief is the erroneous theory that the parties' agreement contemplated an end to his support obligation. This theory is not supported by any language in the subject agreement. To the contrary, the language is unambiguous and reserves for future court decision, should the

---

[2]The record indicates that Beverly's gross earnings are $370 per week ($19,240 gross annual), and $273 net per week ($14,196 net annual).

need arise, Beverly's entitlement to spousal support beyond July 1992. The agreement expressly states that the court's power of modification extends both to the amount *and duration* of support. (See *In re Marriage of Schaffer* (1984) 158 Cal.App.3d 930, 935 [205 Cal.Rptr. 88].) Beverly is not seeking to repudiate the stipulated judgment; she is simply asking the trial court to exercise its discretion under the judgment to continue the period of prejurisdictional support.

The parties' marriage was of long duration and when it was over Beverly was in her 50's and was unemployable. There is no evidence in the record that she had any experience, training or education to qualify her for employment.

We are not suggesting hereby that it is never appropriate for a court to order termination of spousal support under similar circumstances. (See *In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 661 [235 Cal.Rptr. 587].) ■ It is a state policy to encourage spouses to become self-supporting. (*In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, 897 [101 Cal.Rptr. 295].) On the other hand, State policy disfavors termination of spousal support on a specific future date, *even* if it is based on the hope that this will induce the supported spouse to become financially independent. (*In re Marriage of Vomacka* (1984) 36 Cal.3d 459, 467 [204 Cal.Rptr. 568, 683 P.2d 248].) ■ Where, as here, the marriage is of long duration and the wife is without employment skills, the husband's support obligation may be extended. (*In re Marriage of Brantner* (1977) 67 Cal.App.3d 416, 420 [136 Cal.Rptr. 635].)

To justify a continuation of support, Beverly has the burden to show a change of circumstances since the agreement was executed in 1986. So long as the supported spouse has made reasonable efforts to become self-supporting, a change of circumstances may be in the form of "unrealized expectations" in the ability of the supported spouse to become self-supporting within a certain period of time. (*In re Marriage of Aninger, supra*, 220 Cal.App.3d at pp. 240-241; *In re Marriage of Berland* (1989) 215 Cal.App.3d 1257, 1263-1264 [264 Cal.Rptr. 210]; *In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 365 [236 Cal.Rptr. 543]; *In re Marriage of Sheridan* (1983) 140 Cal.App.3d 742, 748 [189 Cal.Rptr. 622].) "[T]he question of reasonable expectations is material and a failure to realize them may constitute a change of circumstances justifying modification of the order." (*Bratnober* v. *Bratnober* (1957) 48 Cal.2d 259, 263 [309 P.2d 441].)

Here, Walter admits that the parties' agreement indicated they "expected" her to be self-supporting by 1992. Beverly presented evidence that she has

made reasonable efforts to become self-supporting, but has failed to do so as "expected." The trial judge made no inquiry into this change of circumstance, and even declared there was no evidence of Beverly's inability to be self-supporting. This defies the factual record.

■ A supported spouse's need is an essential element in determining entitlement to support independent of the other spouse's ability to pay. (*In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, 1175 [208 Cal.Rptr. 345].) ■ Here, the court's failure to give any weight to Beverly's evidence of continuing need is more egregious in light of Walter's continuing ability to pay spousal support. Thus, this situation is not one where the financial needs of *both* parties cannot be satisfied. (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 455 [143 Cal.Rptr. 139, 573 P.2d 41].) As such, the court's denial of Beverly's motion for modification is an abuse of its discretion.

We are not suggesting that Beverly is entitled to the same amount of support she was previously receiving. However, the previous support order of $2,500 per month ($30,000 per year) plus the $10,000 allowed for annual earnings gave Beverly a potential net income of approximately $40,000 per year or about $3,300 per month. The result of the trial court's denial of her modification motion is that her net monthly income is reduced to about $1,500, while Walter continues to enjoy a net monthly income of about $9,000. It is inequitable after a long marriage to supply the husband with a continued standard of living much higher than the wife's. (*In re Marriage of Andreen* (1978) 76 Cal.App.3d 667, 671 [208 Cal.Rptr. 345].)

The facts of *Aninger*, the case adopted by the trial court as on point, are dissimilar and *Aninger* is not controlling here. There, the wife was unable to meet an $800 increase in her monthly housing cost due to her unwise purchase of a residence beyond her financial means. The appellate court ruled that this was insufficient to show a failure of the expectation of the wife's self-sufficiency, since the parties could not have reasonably intended the wife to undertake such a debt. (*In re Marriage of Aninger, supra*, 220 Cal.App.3d at p. 238.) Here, in contrast, an order granting Beverly's request for modification would not violate the parties' expectations pursuant to their written agreement.

Nor does our ruling in this case conflict with our decision in *In re Marriage of Biderman* (1992) 5 Cal.App.4th 409 [6 Cal.Rptr.2d 791]. There, we concluded no material change of circumstances was shown since the parties had made no assumption or expectation that, as the supported spouse, the husband's mental condition would improve in the future enabling him to

resume employment. Instead, under the parties' agreement it was their intent that his disability would continue. (*Id.* at pp. 413-414.) Here, the parties *did* expect Beverly to become self-supporting.

The record provides substantial evidence of a change in circumstances, as well as an overwhelming basis for modification including a showing of Beverly's need, Walter's ability to pay, and authorization to modify pursuant to the parties' marital settlement agreement. Under these circumstances, the trial court's order constitutes an abuse of its discretion as either one without a reasonable factual basis or a ruling amounting to a manifest miscarriage of justice. (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 142-143 [185 Cal.Rptr. 232, 649 P.2d 874].)

The order denying Beverly's motion for modification of spousal support is reversed. This case is remanded to the superior court for rehearing on the amount and duration of spousal support.

Beverly is awarded her reasonable attorney fees and costs on appeal, to be determined by the trial court.

Gilbert, J., and Yegan, J., concurred.

A petition for a rehearing was denied April 1, 1994, and respondent's petition for review by the Supreme Court was denied June 23, 1994.