[Civ. No. 56121. Second Dist., Div. Four. Feb. 29, 1980.]

In re the Marriage of BETTIE DORIS and
RUSSELL LOUIS JACOBS.
BETTIE DORIS JACOBS, Appellant, v.
RUSSELL LOUIS JACOBS, Respondent.

COUNSEL

Nancy J. Madsen for Appellant.

Charles A. Kent for Respondent.

OPINION

**KINGSLEY, Acting P. J.**—In 1977, in an action for dissolution brought by the wife, the parties entered into a long stipulation, carried into the interlocutory decree, which, insofar as is here material, reads as follows:

"The parties stipulate to the following provisions for spousal support payable from respondent to petitioner. Russell Jacobs will pay to Bettie

Jacobs the sum of five hundred dollars ($500) per month commencing on April 1, 1977 and payable through December 31, 1978, less one-half of any net wages earned by Bettie Jacobs during that period of support. Thereafter, spousal support is payable from respondent to petitioner in the sum of one dollar ($1) per year until such time as petitioner becomes eligible to receive her own maximum Social Security benefits, but in no event later than her attainment of age 65 years. Such payments are due at the rate of $250 on the first of each month and $250 on the fifteenth of each month.

"The parties further stipulated that if petitioner attends any business or secretarial school for the purpose of learning or increasing skills for her future employment, at any time through December 31, 1978, upon her enrollment in any said school Russell Jacobs will pay the sum of $600 to aid with all tuition, books, and all other school materials actually incurred as an expense by Bettie Jacobs."

It is agreed that that stipulation was entered into in the light of the fact that the wife then, and for sometime prior thereto, had been suffering from psychiatric problems, necessitating periodic hospitalization. It is also agreed that the provision for reducing support to $1 per year after 18 months was based on the mutual anticipation of the parties that, by that time, the wife's condition would be alleviated to the extent that she could become self-supporting. On October 20, 1978 (two months before the reduction was to take effect), the wife moved to modify the support provision so as to continue support payments. The trial court denied the motion to modify. We reverse.

The wife's contention, supported by her own declaration and by the declaration of her psychiatrist, is that, contrary to the 1977 anticipation, her condition still was such as to prevent her either from continuing the program of education then contemplated, or to be gainfully employed. While we cannot take exception to the trial judge's remarks, quoted to us in the briefs, that it is desirable for a person with the problems of this wife to become busy at work,[1] still that philosophy cannot

---

[1]The trial court said: "I think keeping some person occupied is one of the most therapeutic things that we can do in our life. [¶] ...Well, as I say, I think that the work is therapeutic, and people that don't have something to do to occupy themselves, then they can dwell on their own problems. I think we can avoid that if we can keep busy and perhaps think about other people."

prevail over the fact that such desirable activity is, in some cases, simply impossible of accomplishment.

■ The trial court's decision was made, and is supported here, on the theory that, since the wife had, at the time of the hearing, the same medical needs and the same psychiatric problems as at the time of the interlocutory decree, there had been no "changed circumstances" justifying a modification. That position is in direct conflict with the decision in *In re Marriage of Andreen* (1978) 76 Cal.App.3d 667 [143 Cal.Rptr. 94]. In that case the court was faced with a decree that would, one year later (i.e., in 1979), reduce support to $1 per month. While declining to overturn that provision at that time (i.e., 1978), the court expressly held that, when 1979 arrived, the wife could, then, properly seek modification on the ground that the original anticipation (similar to the one herein involved) that the wife would be self-supporting by 1979 had not turned out to be correct. The *Andreen* court said (at p. 673): "The automatic reduction was based upon the trial court's assumption that by November 1979 wife would be earning enough to afford a standard of living appropriate to the parties' social and cultural condition. The failure of that assumption would constitute a change of condition and provide a ground for modification of this phase of the decree. It is much more realistic (and at least as fair) to appraise the parties' 1979 situation by the measure of actual rather than prophesied 1979 facts."

As applied to the case at bench, we regard *Andreen* as requiring the trial court to reconsider the motion for modification and to grant the wife a support order commensurate with her present needs and the husband's ability.[2] The trial court's legitimate desire to induce the wife to train for, seek and maintain employment should be accomplished by expressly making any new order modifiable not only at suit of the wife but also at the suit of the husband on a showing that the wife, at a later date, had become employable.[3]

The order is reversed, with directions to grant to the wife a reason-

---

[2] In setting the award, the trial court should take into consideration both the then extent of the wife's separate property, her needs, and the husband's then reduced salary. Such award, based on the facts shown at the new hearing, may be the same as, less than, or more than, the original $500 award.

[3] Of course, under the teachings of *In re Marriage of Morrison* (1978) 20 Cal.3d 437 [143 Cal.Rptr. 139, 573 P.2d 41], the new award should not be made automatically terminable at any predetermined date.

able attorney fee, including fees on this appeal, and to conduct a new hearing on the motion in accordance with the views herein expressed.

Jefferson (Bernard), J.,* and McClosky, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.