[Civ. No. 30418. Fourth Dist., Div. Three. July 31, 1984.]

In re the Marriage of IDA and BENSON SCHAFFER.
IDA SCHAFFER, Appellant, v.
BENSON SCHAFFER, Appellant.

**COUNSEL**

Hughes & Associates and Lisa Keehen Hughes for Appellant Wife.

Paoli & Paoli, Paoli, Paoli & Short and Sylvia L. Paoli for Appellant Husband.

## OPINION

BRICKNER, J.*—The parties' 28-year marriage was dissolved by final judgment entered in 1980. Husband was ordered to pay wife $850 per month spousal support for one year and $650 per month for an additional year, with jurisdiction retained over spousal support until the death of either party or the wife's remarriage. Husband, a Los Angeles Superior Court commissioner, was earning $5,531 per month; wife held a marriage, family and child counselor's license, but was unemployed. At the trial's conclusion, the court found wife suffered from emotional maladies which precluded her from working as a counselor, but which did not preclude employment in other fields.

In July of 1982, wife filed an order to show cause re modification seeking an increase of spousal support to $1200 per month. She presented evidence showing continued unemployment which she claimed resulted from severe, chronic depression and anxiety. She argued her health precluded her from *all* employment, including practicing as a marriage, family and child counselor. The court modified the final judgment, ordered husband to pay $400 per month for two years, retained jurisdiction thereafter, and awarded wife $1,000 in attorney fees.

Wife appeals and husband cross-appeals, arguing the court abused its discretion in finding changed circumstances. ■ While the court in a modification hearing "is without authority to modify an order for spousal support unless there has been a material change of circumstances subsequent to the last prior order" (*In re Marriage of Kuppinger* (1975) 48 Cal.App.3d 628, 633 [120 Cal.Rptr. 654]), here, correctly relying on *In re Marriage of Jacobs* (1980) 102 Cal.App.3d 990 [162 Cal.Rptr. 649], the court found a change of circumstance in the unrealized expectation of wife's recovery from her emotional disorders. "I find that there is uncontested testimony that there is a change in circumstances of, number one, the wife, implicit in [the trial judge's] order . . . he felt that she would complete her school and be able to support herself. I believe I can read that from his order. Number two, the psychiatrist testimony . . . the fact that the net [of financial security] is out from under Mrs. Schaffer and she can't take it yet. And I'm using the term 'yet' because I believe that it is within the reasoning given by the psychiatrist."

In 1980, the trial court based its final dissolution of marriage support order upon an assumption of wife's recovery from mental illness and her anticipated improved employability and earning capacity. When, therefore,

---

*Assigned by the Chairperson of the Judicial Council.

in a subsequent order to show cause hearing for modification of support, the assumption is shown to have failed because her mental condition has not improved and continues to preclude employment in her profession, a change of circumstances is shown. Wife is then entitled to "a support order commensurate with her present needs and the husband's ability." (*In re Marriage of Jacobs, supra,* 102 Cal.App.3d 990, 993, fn. omitted.)

■ Though wife's motion for increased spousal support was granted, she argues the court abused its discretion. She asserts the award was inadequate in both amount and duration. To support her contention, she claims certain facts mandate a greater award. These include length of marriage, husband's salary and retirement benefits at the time of the trial in 1980, wife's alleged deprivation of her separate property share, husband's receipt of funds from the sale of the community property home, wife's age, debt allocations at the time of the final judgment, and amounts paid to wife by husband prior to the 1980 trial. These are *irrelevant* to the issue of post-judgment modification of spousal support, however, because they are factual issues considered and resolved *at the trial.* Thus, they are fused and form the foundational mosaic upon which the original 1980 judgment rests; they cannot be singly or jointly analyzed anew upon a subsequent modification hearing. The tasks of the court at a postjudgment modification hearing are to discern the change, if any, of the circumstances established at the trial and to formulate an order based upon those changes.[1]

■ Wife urges, as a second instance of abuse of discretion, the modification court's failure to consider, in its order, wife's general unemployability, contending she cannot work in *any* capacity. To determine if wife established a change of circumstances in general employability, we must first examine the 1980 judgment. Implicit therein is a finding that she could not then function as a marriage, family and child counselor but was able to seek other, less remunerative, work. The projected step down in support was based on a presumed gradual improvement of wife's general employability in a field other than counseling and a presumption she would eventually be able to work as a counselor.

The 1980 trial court found, in effect, she could provide for all her needs in her first two years, except to the the extent of $850 per month in the first year, and to the extent of $650 per month in the second year. Her annual

---

[1]A *change* in circumstances cannot be ascertained unless the *original* circumstances themselves are known. The final judgment of dissolution of marriage should establish these circumstances, which form the basis for the trial court's order. The great advantage to the parties, therefore, of a definitive and final expression of those facts in a post trial statement of decision (Code Civ. Proc., § 632), is obvious.

earning ability, therefore, theoretically increased approximately $200 per month.

The trial court's ordered termination of support in 1982 was based on its presumption that she could be self-supporting as a marriage, family and child counselor. The court, at the modification proceeding in 1982, found this expectation unrealized. It also impliedly found, as contemplated by the 1980 judgment, her *general* employability continued to improve. Thus, *no* change of circumstances in general employability was established at the order to show cause hearing. At the hearing, the court stated, "I further believe that the psychiatrist who testified did not feel that this was a permanent situation. [¶] [B]ut there are jobs that she could work and earn some income. Two years would be a sufficient time within which she could either find and train herself for a different type of an occupation or her personality defect would be of such that she could overcome that and take advantage of the training, education and licensing she already has." Moreover, the court specifically found she was then capable of earning "money to contribute towards her own support . . . ."

The 1982 support order of $400 per month for two years is reasonably consistent with the trial court's 1980 judgment. Wife's earning ability in the third year would theoretically increase by an additional $200 per month. The court might have ordered support in the amount of only $200 per month in the fourth year, but we do not see, in light of the changed circumstances shown at the hearing, any abuse of discretion in the court's maintaining the $400 support order.

Nor do we find the court erred in awarding support for only two years, as it relied on testimony her mental condition may not be permanent and allowed sufficient time for her to recover and become fully self-supporting. Support was not, as claimed by wife, "automatically" terminated in two years. Rather, the court *retained jurisdiction* on this issue.

■ "The trial court's discretion with regard to the amount *and duration* of spousal support is broad, and only a clear abuse of that discretion will justify a reversal." (*In re Marriage of Patrino* (1973) 36 Cal.App.3d 186, 188 [111 Cal.Rptr. 367].) Our review of the facts produced at the hearing leads us to conclude the evidence supports both the amount and the duration of the ordered support payments. There was no abuse of discretion.

■ Wife claims the court erred in failing to order $2,500 in attorney fees, as requested. We again disagree. "The need of a spouse for an award of attorney's fees and the amount of that award are matters addressed to the sound discretion of the trial court. [Citation.] The exercise of this discretion

will not be disturbed on appeal 'without a clear showing of abuse.' " (*In re Marriage of Marsden* (1982) 130 Cal.App.3d 426, 447 [181 Cal.Rptr. 910].)

The court, with complete financial information before it, was best able to determine a reasonable fee in light of the parties' needs and abilities. The burden is on wife to establish an abuse of discretion, which has been characterized as follows: " ' " ' 'In a legal sense, discretion is abused whenever, in its exercise, a court exceeds the bounds of reason, . . .' " ' " (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 114 [113 Cal.Rptr. 58].) We cannot say as a matter of law the court abused its discretion by awarding $1,000 in attorney fees.

Judgment affirmed. Each party to bear their own costs on appeal.

Trotter, P. J., and Sonenshine, J., concurred.

On August 24, 1984, the opinion was modified to read as printed above. The petition of appellant Wife for a hearing by the Supreme Court was denied September 26, 1984.

**[Opinion certified for partial publication.\*]**

---

*\*Parts II and III of this opinion are not published because they do not meet the standards for publication contained in California Rules of Court, rule 976(b).

involuntary manslaughter conviction. The enacters of the relevant statutes had a rational basis for excluding involuntary manslaughter from the concept of serious felonies, while including murder and voluntary manslaughter, since the omission of involuntary manslaughter comports with the culpability distinction between these crimes, in that murder and voluntary manslaughter require intent, while involuntary manslaughter requires does not. (Opinion by Brown (G. A.), P. J., with Woolpert and Martin, JJ., concurring.)