5 Cal.App.4th 409 (1992)
6 Cal. Rptr.2d 791
In re the Marriage of SHARON M. and LAWRENCE J. BIDERMAN.
SHARON M. BIDERMAN, Appellant,
v.
LAWRENCE J. BIDERMAN, Respondent.
Docket No. B057555.
Court of Appeals of California, Second District, Division Six.
April 9, 1992.
*411 COUNSEL
Taylor, McCord, Johnson, Conroy & Praver and David L. Praver for Appellant.
Loomis & Barrabee and Jan Loomis for Respondent.
OPINION
YEGAN, J.
Sharon M. Biderman appeals from the order extending permanent spousal support beyond the termination date specified in the final judgment. She was ordered to pay $650 per month for an additional six months to Lawrence J. Biderman, her former husband, with a review date of July 24, 1991. At the July 24, 1991 hearing, appellant was ordered to continue making $650 per month support payments until we decide the instant appeal. Appellant meritoriously contends the trial court abused its discretion as a matter of law by modifying the support termination date because respondent failed to show a material change of circumstances.
After a 20-year marriage the parties separated in 1984. Appellant filed her petition for dissolution in 1985. The issue of marriage status was bifurcated and dissolution was granted in 1986. In January of 1990, following a contested trial before retired Judge Jerry Pacht, judge pro tempore, judgment was entered on reserved property and support issues. Each party was awarded approximately $350,000 worth of assets, real property and cash. Appellant was ordered to pay respondent support in the sum of $650 per month for 12 months at which time it would "reduce to zero." Prior to trial, respondent had not requested pendente lite support and no order thereon was made during the five-year period.
The court retained jurisdiction to award spousal support to respondent but expressly determined that "... based on the value and nature of the award of property to him as set forth above, there will be no need for an award of spousal support after the 12-month period. The court further finds that the award of assets to respondent, if prudently managed, should generate sufficient income to competently care for the respondent during his lifetime." Respondent did not appeal from the judgment. As we shall explain, what he is really attempting to do is to collaterally attack the 1990 final judgment.
*412 In his petition for modification and extension of spousal support filed in January of 1991, respondent claimed (1) he had been unable to live on the support awarded, (2) the $43,000 cash he received at the bifurcated property trial had been used to pay off debts, (3) he was still unable to work due to the depression, and (4) he had been so disabled since separation in 1984.
Respondent's financial declaration indicated he still owned all three pieces of real property awarded him in the dissolution, two of which were still being rented for an annual net amount of $3,176. Respondent lives in the third residence. His last salary as an engineer was $3,445 per month in 1984.
Appellant's financial declaration indicated her salary as a community college professor is lower than it had been as she was on one-year sabbatical from fall of 1990 to the fall of 1991. Her net worth was substantially the same as at the time of the trial. She contended that respondent failed to show any material change in circumstance.
The hearing on the motion was based solely on declarations and documentary evidence. (1) A trial court has discretion to permit or exclude live-witness testimony in deciding postjudgment family law motions and orders to show cause. (Reifler v. Superior Court (1974) 39 Cal. App.3d 479, 483 [114 Cal. Rptr. 356].) In the trial court, respondent's claim for further spousal support was premised solely upon his treating psychologist's opinion that respondent's disability continued since the original order. Respondent did not contend that he had imprudently managed his estate. The trial court determined that the continuing disability theory was meritorious and only found "... that there has been a change of circumstances and that change of circumstances is Mr. Biderman does still remain disabled."
(2) "The propriety of an order modifying spousal support `rests within the trial court's sound discretion. So long as the court exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial evidence to support it. [Marriage of Wilson (1988) 201 C.A.3d 913, 247 C.R. 522; Marriage of Crobarger (1986) 178 C.A.3d 56, 233 C.R. 480.]' (Hogoboom & King, [Cal. Practice Guide: Family Law 1 (The Rutter Group) ¶ 17:39)].) Reversal requires a clear showing of abuse of discretion. (In re Marriage of Hopwood (1989) 214 Cal. App.3d 1604, 1607 [263 Cal. Rptr. 401]; In re Marriage of Aninger (1990) 220 Cal. App.3d 230 [269 Cal. Rptr. 388].) A motion for modification of spousal support may only be granted if there has been a material change of circumstances since the last order. (In re Marriage of Kuppinger (1975) 48 Cal. App.3d 628 [120 Cal. Rptr. 654].) Otherwise, dissolution cases would have no finality and unhappy former spouses could bring repeated actions for modification with no burden *413 of showing a justification to change the order. Litigants `"are entitled to attempt, with some degree of certainty, to reorder their finances and life style [sic] in reliance upon the finality of the decree."' (In re Marriage of Farrell (1985) 171 Cal. App.3d 695, 703 [217 Cal. Rptr. 397], citing In re Marriage of Mulhern (1973) 29 Cal. App.3d 988, 992 [106 Cal. Rptr. 78].) Absent a change of circumstances, a motion for modification is nothing more than an impermissible collateral attack on a prior final order. (Ibid.)" (In re Marriage of Smith (1990) 225 Cal. App.3d 469, 480 [274 Cal. Rptr. 911].)
(3) Respondent contends there was a material change of circumstances because there was a "failed expecation" or "failed assumption" from the 1990 permanent spousal support order. "[I]n a subsequent order to show cause hearing for modification of support, [where] the assumption [in a prior order] is shown to have failed because [the supported spouse's] mental condition has not improved and continues to preclude employment in [the supported spouse's] profession, a change of circumstances is shown." (In re Marriage of Schaffer (1984) 158 Cal. App.3d 930, 934 [205 Cal. Rptr. 88]; see also In re Marriage of Jacobs (1980) 102 Cal. App.3d 990, 992-993 [162 Cal. Rptr. 649]; In re Marriage of Andreen (1978) 76 Cal. App.3d 667, 673 [143 Cal. Rptr. 94].)
The issue then is whether respondent's failure to mentally recuperate is a "failed expectation" or "failed assumption" of the 1990 order constituting a material change of circumstance. If not, the court abused its discretion as a matter of law.
The original order is not reasonably susceptible to the meaning attached to it by respondent and the trial court, i.e., that respondent's disability was implicitly expected to change and permit him to resume employment. The order states the value and nature of the property awarded would alleviate the need for support after a one-year period. The support was granted for one year to permit respondent, whose continued disability was presumed, to convert his assets so they would produce greater income. Thus the finding, that the assets, prudently managed, "should generate sufficient income to competently care for the respondent during his lifetime." Moreover, it is too late in the day to presume that Judge Pacht was unaware that respondent had not received pendente lite spousal support for the five-year period that the dissolution petition was pending.
The court reserved jurisdiction because the marriage was lengthy (see In re Marriage of Morrison (1978) 20 Cal.3d 437, 453 [143 Cal. Rptr. 139, 573 P.2d 41]) and the assumption that the assets would generate sufficient income, not on the expectation that respondent's mental condition would *414 improve allowing him to work again. Thus, respondent's reliance on In re Marriage of Heisterman (1991) 234 Cal. App.3d 1195 [286 Cal. Rptr. 127] is misplaced. There, the Court of Appeal reversed a trial court's order terminating spousal support where the supported spouse was not put on adequate notice that she was expected to reenter the job market. (Id., at p. 1204.) Here there was no "work-hardening" order.
At oral argument and perhaps recognizing that he could not prevail on the trial court's finding, respondent asked for affirmance on the theory that the "failed expectation" or "failed assumption" is that respondent's assets, even though prudently managed, did not generate sufficient income to render him self-supporting. The record shows that this was not his theory in the trial court. "`A party is not permitted to change his position and adopt a new and different theory on appeal....'" (People v. Broderick (1989) 209 Cal. App.3d 489, 501 [257 Cal. Rptr. 397].)
The 1990 order is supported by both the facts and the law. It is not unreasonable for a trial court to conclude that even a clinically depressed spouse with a net estate of $350,000 should be self-supporting. The Legislature has expressly recognized that "[w]hen either party ... has ... a separate estate ... sufficient to give him or her proper support, ... no support order shall be made or continued against the other party." (Civ. Code, § 4806.)
There being no factual basis from which the court could find a material change in circumstances, a "failed expectation," or a "failed assumption," concerning respondent's capacity to work, it was an abuse of discretion as a matter of law to extend support.
We recognize that litigation in family law has a capacity to be never-ending. A marriage may terminate but business and personal relationships, including support obligations, may continue. Nevertheless, somewhere along the line, litigation should cease. Paraphrasing Mr. Justice White, the words, family law, are not a mere talisman in whose presence the concept of finality of judgment fades away and disappears. (Cf. Coolidge v. New Hampshire (1971) 403 U.S. 443, 461 [29 L.Ed.2d 564, 580; 91 S.Ct. 2022].) Were we to hold that there was a material change of circumstances given these uncontradicted facts, the sanctity of a final judgment would be sacrificed and we would give our imprimatur to what is, in essence, a collateral attack. This would open the door to vexation, expense, wasted effort, and a further drain on our overburdened family law courts.
(4) We do not address respondent's contention that the trial court erred in failing to increase spousal support and grant him attorney fees. This *415 contention is made for the first time in his brief. Having failed to appeal on these grounds we do not reach the merits of these claims. Code of Civil Procedure section 906 does "... not authorize the reviewing court to review any decision or order from which an appeal might have been taken." (See Zalk v. General Exploration Co. (1980) 105 Cal. App.3d 786, 795 [164 Cal. Rptr. 647].)
The order modifying the termination date of support is reversed. Each party shall bear his or her own costs and attorney fees on appeal.
Stone (S.J.), P.J., and Gilbert, J., concurred.