Filed 9/30/15  In re Marriage of Nussbaum CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of ESTEFANIA and STEVE NUSSBAUM. | D067550 |
| ESTEFANIA NUSSBAUM, | |
| Respondent, | (Super. Ct. No. D486177) |
| v. | |
| STEVE NUSSBAUM, | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Cindy D. Davis, Judge.  Affirmed.

Patrick J. McCrary for Appellant.

Estefania Nussbaum, in pro. per., for Respondent.

Steve Nussbaum appeals from an order of the superior court reducing, but not terminating, his spousal support obligations to his former wife, Estefania Nussbaum.[1] He contends the court erred in (1) considering his earning ability and (2) not considering Estefania's history of poor asset management and failure to attempt to become self-supporting.[2]  We find Steve's arguments do not support a reversal of the order and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Steve and Estefania married in July 1986 and separated 18 years later in 2004. Estefania filed a petition to dissolve the marriage in September 2004 and in 2006 the parties entered into a marital settlement agreement that divided their property; pursuant to the agreement's terms, Steve was awarded the couple's home and he paid Estefania $149,000 in after-tax dollars to equalize the division of property.[3]

The issue of spousal support was tried separately to the court.  At the time, Steve's monthly income was $7,542 and Estefania's was $3,500.  Finding that Estefania's income was insufficient to meet the standard of living enjoyed during the marriage but recognizing that Steve had certain health issues, the court awarded Estefania spousal

---

[1]     We refer to the parties by their first names as is the custom in family law matters. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475, fn. 1.)

[2]     Steve makes a related argument that the court erred in finding that Estefania had not previously been given a warning in accordance with *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705 (*Gavron*), which recognized that "[i]nherent in the concept that the supported spouse's failure to at least make good-faith efforts to become self-sufficient can constitute a change in circumstances which could warrant a modification in spousal support is the premise that the supported spouse be made aware of the obligation to become self-supporting.  (*Id*. at p. 712.)

[3]     Estefania used the equalization payment to purchase a condominium in San Diego.

support of $1,000 a month. The court also acknowledged Steve's stated desire to retire when he reached age 62 (in 2011) and indicated that the issue of spousal support could be revisited at that time.[4] The court entered a judgment that incorporated its findings, the spousal support award and a preprinted warning that the court could consider a party's failure to make reasonable efforts to become self-supporting as a basis for later modifying or terminating spousal support.

In June 2012, Estefania (who had a 10th grade education) lost her job as an electronic assembler when her employer moved its local operations to Puerto Rico. She was unable to find another job for more than a year and, based on her lack of income, she lost her condominium to foreclosure. She cashed out her portion of the community retirement benefits (and paid the related taxes and penalties) so that she could buy a condominium in Las Vegas, Nevada, where she ultimately found a job working 20 to 30 hours a week as a caregiver for $9.50 an hour.

After retiring at the end of 2013, Steve stopped paying spousal support and filed a motion to terminate his obligation to pay support. Because she had very limited assets, almost none of which were liquid, Estefania was forced to take out a loan and borrow money from family and friends to meet her monthly financial needs. In May 2014,[5] Steve started receiving $2,400 per month in social security benefits. Estefania filed an

---

[4]    In 2007, Steve apparently brought a motion to modify spousal support, which the superior court denied after concluding that there was no change in circumstances sufficient to warrant modification.

[5]    All further date references are in 2014 except as otherwise noted.

opposition to Steve's motion to terminate support and submitted a declaration setting forth her financial situation.

Based on the evidence, the court found that Steve's social security benefits exceeded his monthly expenses ($1,590) by $810 and that he could reasonably expect to receive an additional $725 per month in income from his retirement savings. It further found that Estefania had monthly income of $1,140 and expenses of $1,730 (a substantial portion of which was debt service), resulting in a net negative monthly income of $600. It found that Steve had the ability to continue paying support and that Estefania was unable to meet her monthly financial needs and declined to terminate spousal support, but reduced it to $600 per month effective February 1 and ordered Steve to pay Estefania $3,600 in support arrearages on August 1; it also gave Estefania an oral *Gavron* warning.

Steve appeals.

## DISCUSSION

A modification of spousal support requires a material change of circumstances since the last order. (*In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 396 (*Dietz*).) A change of circumstances means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs and includes all factors affecting need and ability to pay, including (a) the extent to which each party's earning capacity is sufficient to maintain the marital standard of living; (b) the supporting party's ability to pay spousal support; (c) the parties' respective needs based on the marital standard of living, obligations and assets, including their separate property; (d) the parties' ages and health; (e) the duration of the marriage; (f) the supported spouse's

4

ability to engage in gainful employment; and (g) the balance of the hardships to the parties. (*Id.* at pp. 396-397, citing Fam. Code, § 4320, subds. (a), (c)-(f), (h), (k).)

The trial court has broad discretion in ruling on a request to modify or terminate a spousal support order. (*In re Marriage of Biderman* (1992) 5 Cal.App.4th 409, 412.) We review an order granting or denying a request to modify spousal support for an abuse of discretion, which is established only when " 'it can fairly be said that no judge would reasonably make the same order under the same circumstances.' " (*In re Marriage of Reynolds* (1998) 63 Cal.App.4th 1373, 1377, quoting *In re Marriage of Sinks* (1988) 204 Cal.App.3d 586, 591.) Moreover, we may not disturb a trial court's factual findings if there is substantial evidence to support them. (*In re Marriage of Norvall* (1987) 192 Cal.App.3d 1047, 1060.)

Here, the court recognized that Steve's retirement constituted a change of circumstance and that he had a right to stop working. It recounted the parties' standard of living during the marriage and characterized it as middle class, one that "wasn't extravagant, but [that] was solid." It noted that the 18-year marriage was considered as long term and that Steve had only paid support for eight years. The court discussed the parties' respective monthly incomes and expenses and found that, although both parties had "[done] the best they [could]," Estefania was unable to meet her monthly needs and Steve had the ability to continue to pay support at a reduced level. The evidence in the record supports the court's findings and, given the circumstances, we conclude it did not abuse its discretion in reducing rather than terminating Steve's spousal support obligations.

5

Steve also argues that the family court erred in finding that Estefania had not been given a *Gavron* warning. Unquestionably, the judgment of dissolution included the following preprinted language:

> "**NOTICE**: It is the goal of this state that each party will make reasonable good faith efforts to become self-supporting as provided for in Family Code section 4320. The failure to make reasonable good faith efforts may be one of the factors considered by the court as a basis for modifying or terminating spousal or partner support."

Thus, the court's observation that no *Gavron* warning appeared in the record before it was mistaken.[6] However, Steve's reliance on this mistake as a basis for reversal is misplaced. The fact that a *Gavron* warning has been given does not excuse the family court from considering the factors set forth in Family Code section 4320 in determining whether to modify or terminate support. (E.g*., Dietz, supra,* 176 Cal.App.4th at p. 396.) Further, the transcript of the hearing here shows that the court declined to terminate support based on its application of those factors, rather than solely based on the absence of a prior *Gavron* warning.

The family court did not abuse its discretion in reducing rather than terminating Steve's obligation to pay spousal support to Estefania.

---

[6] Notably, Steve did not bring this mistake to the court's attention below. In fact, instead of pointing out the preprinted language in the judgment he relies on now, he argued that the court's 2006 acknowledgement that spousal support could be revisited at the time of his retirement was tantamount to a *Gavron* warning. Steve's failure to direct the court to the judgment could be deemed to constitute a waiver of the issue for purposes of appeal. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 826.) However, since the issue has not been briefed by the parties, we decline to rely on it as a basis for affirming the order.

DISPOSITION

The order is affirmed.  Estefania is awarded her costs on appeal.


NARES, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.